# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:21-CV-00132-KDB-DSC

| | |
|---|---|
| IREDELL WATER CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF STATESVILLE,<br><br>Defendants. | **ORDER** |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss. (Doc. No. 47). Having carefully considered the parties' briefs and exhibits, the Court will grant in part and deny in part the motion for the reasons discussed below.

## I.  BACKGROUND

This case involves a territorial dispute over water utility service between the City of Statesville ("City") and Iredell Water Corporation ("IWC"), a North Carolina corporation formed in 1966 as a Chapter 55A nonprofit corporation to construct and operate a water distribution system. IWC asserts that since at least 1985 the City has been annexing property and providing water to persons in those annexed areas in violation of IWC's exclusive monopoly to provide water under 7 U.S.C. § 1926(b).

IWC has brought claims under 42 U.S.C. § 1983 and is seeking 1) damages for the alleged encroachment, 2) a declaratory judgment that the City's actions violate § 1926(b), 3) an injunction restraining the City from selling water in competition with IWC, and 4) a declaration that the City's equipment used to serve water customers that are allegedly within IWC's service area be held in

1

constructive trust for IWC. IWC filed its complaint against the City on September 2, 2021. (Doc. No. 1).

On March 25, 2022, the Court granted the City's Motion for Partial Summary Judgment holding that § 1926(b)'s language unambiguously prohibits the City from curtailing or limiting water service by annexation and that the sale of water alone is not a triggering violation of § 1926(b). *See* Doc. No. 31, p. 6. IWC filed a motion for reconsideration, which the Court denied. *See* Doc. No. 32.

IWC has filed an Amended Complaint, alleging, in the alternative to its arguments made in its original Complaint, that each City annexation of a disputed area violates § 1926(b) and that the City's annexations of disputed areas over the past thirty-four years constitute a continuing violation, such that the statute of limitations should not apply. (Doc. 45, ¶ 7). The City has now moved to dismiss. *See* Doc. No. 47.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd,* 566 U.S. 30, 132 S. Ct. 1327, 182 L. Ed. 2d 296 (2012).

A complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. In evaluating whether a claim is sufficiently stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions

devoid of further factual enhancement [,] ... unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc*., 591 F.3d 250, 255 (4th Cir. 2009). Further, a court is not bound to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002); *see also Miller v. Pacific Shore Funding*, 224 F.Supp. 2d 977, 984 n.1 (D. Md. 2002) ("When the bare allegations of the complaint conflict with any exhibits or documents, whether attached or adopted by reference, the exhibits or documents prevail") (citing *Fayetteville Investors v. Commercial Builders, Inc*., 936 F.2d 1462, 1465 (4th Cir. 1991)); *Sec'y of State for Defence v. Trimble Navigation Ltd*., 484 F.3d 700, 705 (4th Cir. 2007). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Under Rule 12(b)(7) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). In ruling on a Rule 12(b)(7) motion to dismiss, courts accept as true the allegations set forth in a complaint. *Buttar v. November*, No. 3:10cv668, 2011 U.S. Dist. LEXIS 61891, 2011 WL 2375492, at *7 (W.D.N.C. June 9, 2011). A decision to dismiss for failure to join a party "'must be made pragmatically, in the context of the substance of each case, rather than by procedural formula.'" *Teamsters Loc. Union No. 171 v. Keal Driveaway Co*., 173 F.3d 915, 918 (4th Cir. 1999) (quoting *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 119 n.16, 88 S. Ct. 733, 19 L. Ed. 2d 936 (1968)). The moving defendant bears the burden of showing that a party must be joined for a just adjudication. *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005).

### III. DISCUSSION

The City makes three arguments in its motion to dismiss. First, the City argues that IWC cannot avail itself of the protection of 7 U.S.C. § 1926 because under IWC's Articles of Incorporation it can only serve water to those who need it from its system and IWC has no obligation by law to serve anyone other than its members. Therefore, it cannot properly allege that it has provided or made available water. Second, the City maintains that to the extent that IWC's claims arose from annexations before September 2, 2018, those claims are barred by the statute of limitations. And third, the City asserts that IWC'S claims should be dismissed under Rule 12(b)(7) for failure to join necessary parties under Fed. R. Civ. P. 19. The Court will address each argument in turn.

A. <u>Legal Right Under State Law</u>

To qualify for protection under 7 U.S.C. § 1926(b), a water association must prove "that (1) it is an 'association' within the meaning of the [Consolidated Farm and Rural Development Act], (2) it has a qualifying loan outstanding, and (3) it has provided water service or made it available to the disputed area." *Chesapeake Ranch Water Co. v. Bd. of Comm'rs*, 401 3d. 274, 278 (4th Cir. 2005). In the Fourth Circuit, a water association has provided or made available water for purposes of § 1926(b) if "(1) it is physically capable of serving the area, (2) it has the legal right under state law to do so, and (3) the disputed area is already within the geographic boundaries of the association's franchise area." *Id.* at 279.[1] The City argues that IWC does not qualify for §

---

[1] IWC, for the second time, misstates the test in the Fourth Circuit to determine whether an association has "made service available." *See* Doc. No. 23-3, 53. IWC continues to incorrectly assert that the Fourth Circuit has adopted the "Pipes in the Ground" test. *Id.* As the Court has already noted, the Fourth Circuit has held "that the test articulated by the Sixth Circuit, by requiring a water association invoking § 1926(b) to demonstrate that the disputed area is within the geographic boundaries of the association's existing franchise area, best effectuates Congress' intent

4

Case 5:21-cv-00132-KDB-DSC    Document 58    Filed 09/28/22    Page 4 of 14

1926(b) protection in the disputed areas because it cannot satisfy the second prong of the "provided or made available water" test, that it has the legal right under state law to serve the disputed area. The City contends that: (1) IWC's Articles of Incorporation only permits someone to become a member of IWC if they need water; (2) IWC can only serve its members under its Articles of Incorporation; and (3) IWC has no obligation under North Carolina law to serve anyone other than its members. *See* Doc. No. 48, p. 10.

IWC's Articles of Incorporation state that the objects and purposes for which it is formed are:

> (a) To associate its members together and for their mutual benefit, and to that end to construct, maintain and operate a private water system for the supplying of water to its members **and for the sale of any surplus water remaining after the needs of its members have been satisfied,** and to engage in any activity related thereto, including but not limited to, the acquisition of water by appropriation, drilling, pumping and/or purchase, and the purchase, laying, installation, operation, maintenance and repair of wells, pumping equipment, water mains, pipe lines valves, meters and all other equipment necessary to the construction, maintenance and operation of a water system.
>
> (h) The foregoing shall be construed both as objects and powers, and the enumeration thereof **shall not be held to limit or restrict in any manner the general powers** conferred on this corporation by the law of the State of North Carolina, all of which are hereby expressly claimed.

*See* Doc. 28-1 at 6-7, Article II (a) and (h) (emphasis added). Members is defined as "only persons having a reasonable accessibility to the sources of, and who are in need of having water from the water system constructed, maintained, and operated by the corporation." *See* Article VI.

---

in passing § 1926(b). We therefore adopt the *Le–Ax test* as our own. For purposes of § 1926(b), to prove that it has provided or made available service, a water association must demonstrate that (1) it is physically capable of serving the area in dispute, (2) it has the legal right under state law to do so, and (3) the disputed area is within the geographic boundaries of the association's existing franchise area." *Chesapeake Ranch*, 401 F.3d at 281; *see* Doc. No. 37 n. 1. The Court does not know if these misstatements are the result of a lack of care or a lack of candor, but neither possibility is acceptable to the Court. While counsel is of course encouraged to zealously represent their client, they must do so appropriately with accurate citation to the governing law.

5

A corporation's charter is a contract and therefore the rules of construction that govern contracts apply. *See Nat'l Right to Work Legal Def. & Educ. Found.*, 487 F. Supp. 801, 807 (E.D.N.C. 1979) (citing *Trustees of Dartmouth College v. Woodward*, 17 U.S. (4 Wheat.) 518, 704, 4 L. Ed. 629 (1819)). The meaning of a corporate charter is to be determined first by its specific, clear, and unambiguous words taken in their ordinary sense. *Jamestown Mut. Insurance Company v. Nationwide Mutual Insurance Co.*, 266 N.C. 430, 146 S.E.2d 410 (1966).

By the plain language of IWC's Articles of Incorporation it can sell water to individuals other than its members. *See* Article II (a). IWC placed no limitations on itself, other than satisfying the needs of its members before it sells surplus water to others. Furthermore, Article II (h) expressly states that the foregoing powers do not limit "in any manner the general powers conferred on [IWC] by the law of the State of North Carolina, all of which are hereby expressly claimed." *Id*.

The City contends that Article II (h) does not save IWC because "North Carolina law does not provide any statutory obligation for water associations to provide water to anyone." *See* Doc. No. 57, p. 3. "IWC seems to think that the lack of any statutory authority to provide water actually means that 'North Carolina places no statutory boundary limitation on the authority of IWC to sell water in the state.'" *Id*. However, this argument confuses rights and duties. As the Fourth Circuit has noted, "while a legal duty is one way to demonstrate that water service has been made available, it is not a prerequisite to invoking § 1926(b) in every case." *Chesapeake Ranch Water Co.* 401 F.3d at 279 n.2 (citing *Le-Ax*, 346 F.3d at 706 n.1 ("We have only required (like the Tenth Circuit) a state-law right (not duty) to serve the area to invoke § 1926.")). While North Carolina

6

law may not impose a duty or obligation on IWC, that does not mean it has no right under state law to serve individuals in these disputed areas.[2]

In sum, IWC's Articles of Incorporation do not prohibit it from serving individuals other than its member and the City has failed to show any other prohibition under North Carolina law. Therefore, the Court will deny the City's motion as to IWC not having the legal right under state law.

B. Annexations Prior to September 2, 2018

The City has moved, once again, to dismiss all claims that arose before September 2, 2018, as outside the statute of limitations.[3] The City argues that each annexation is a single and discrete act and accordingly the continuing violation doctrine does not apply. Further, even if the continuing violation doctrine does apply, the City asserts that IWC impermissibly "sat on its hands for thirty-three (33) years" after it knew about the City annexing and providing water to the disputed areas.

IWC retorts that: (1) annexation does not cause an injury to IWC or violate IWC's § 1926(b) rights; (2) even if annexation alone violates § 1926(b), the continuing violation doctrine

---

[2] IWC does argue that 7 C.F.R. § 1942.17(n)(2)(vii) imposes a federal obligation to provide water service on USDA borrowers. 7 C.F.R. § 1942.17(n)(2)(vii) provides that an association must agree, as a condition of receiving funds, that a person within the service area who can feasibly and legally receive water service has a direct private right of action against the fund recipient if the recipient fails to make adequate service available. *Wayne v. Vill. of Sebring*, 36 F.3d 517, 528 (6th Cir. 1994).

[3] Both parties agree the statute of limitations for IWC's claims is three years. There is no specified statute of limitations in § 1983 and thus "[t]he statute of limitations for all § 1983 claims is borrowed from the applicable state's statute of limitations for personal-injury actions, even when a plaintiff's particular § 1983 claim does not involve personal injury." *Tommy Davis Const., Inc. v. Cape Fear Pub. Util. Auth.*, 807 F.3d 62, 66–67 (4th Cir. 2015). In North Carolina, a claim for personal injury must be brought within three years from the time the harm "becomes apparent or ought reasonably to have become apparent to the claimant." N.C. Gen. Stat. § 1-52(16). Thus, the statute of limitations in North Carolina for claims brought under 42 U.S.C. § 1983 is three years. *Tommy Davis Const.,* 807 F.3d at 66–67.

7

applies and thus IWC's claims relating to annexations before September 2, 2018, are not barred; and (3) IWC exercised reasonable due diligence in pursuing its claims.

I. IWC's "Annexation Alone" assertion

The Court must first address IWC's repeated assertion that this Court has ruled that "annexation alone" constitutes a violation under 7 U.S.C. § 1926(b). A careful reading of the Court's March 25, 2022 Order reveals that the Court did no such thing. The Court ruled that for IWC to have a cognizable § 1926(b) claim it must allege that the City has restricted or abridged its water service through either the annexation of an area that IWC serves or by the granting of a private franchise for similar service within IWC's service area.[4] Accordingly, the Court held that the question became, for the statute of limitations analysis, "whether an annexation *that curtails an association's water service* is a single or continuing violation of the statute." The Court concluded that "IWC's ongoing inability to provide water service in the annexed areas is merely an ill effect of a single, discrete action, *the initial annexation that resulted in the curtailment of IWC's water service*. See City of Lebanon, Mo.,* 605 F.3d at 516 (A city "curtails or limits service

---

[4] "The statute's language unambiguously prohibits a municipality from curtailing or limiting water service rights by: (1) annexing an area that an association serves and thereby restricting water service by the association; or (2) granting a private franchise for similar service within the association's service area. *See Chesapeake Ranch Water Co.*, 401 F.3d at 278 (citing *Bell Arthur*, 173 F.3d at 520) (holding § 1926(b) protects against only certain forms of competitive behavior, including "curtailment or limitation of the associations' service areas through annexation or through the imposition of conditions for service such as the requirement of a franchise, license, or permit.") (citing *Bell Arthur*, 173 F.3d at 520)). Thus, for IWC to have a cognizable § 1926(b) claim it must allege that the City has restricted or abridged its water service through one of these two enumerated competitive actions. *See Pub. Water Supply Dist. No. 1 of Greene Cty., Missouri v. City of Springfield, Missouri*, No. 20-CV-03318-SRB, 2021 WL 4806736, at *4 (W.D. Mo. Oct. 14, 2021) ("§ 1926(b) does not state, or even suggest, that it applies absent one of these two enumerated events.")." *See* Doc. No. 31, p. 6.

within the meaning of § 1926(b) when it initially provides service to a customer, not when it continues to do so.")." (emphasis added). *See* Doc. No. 31, p. 8.

At no time has the Court ruled that an annexation that does not curtail IWC's water service is actionable under § 1926(b). The Court did reject IWC's argument that the competitive water sales alone establish a continuous violation of § 1926(b) based on the plain and unambiguous text of the statute.[5] *See* Doc. No. 31, p. 7. Yet, IWC argues that when the Court held that 7 U.S.C. §1926 (b) prohibits "an annexation *that curtails* an association's water service" the Court in fact ruled that "the City's annexation which overlaps the § 1926(b) protected service area of IWC triggers a violation of § 1926(b) regardless of whether the annexation is followed by competitive water sales by the City." *See* Doc. No. 53, p. 12-13. However, this conclusion is directly contradicted by the plain text of the Court's Order.

In sum, the Court held that the initial "annexation that resulted in the curtailment of IWC's water service" triggers a violation of § 1926(b) and not the continuous competitive water sales that follow. *Id.* at 8.

II. *Continuing Violation Doctrine*

The continuing violation doctrine states that "when a harm has occurred more than once in a continuing series of acts or omissions, a plaintiff under certain circumstances may allege a 'continuing violation' for which the statute of limitations runs anew with each violation." *Gregory*

---

[5] IWC argued that "annexation itself is not required for a § 1926(b) violation to occur…Iredell's claims do not arise from annexation, but rather from competitive water sales that are ongoing and comprise a 'continuing violation' of § 1926(b)." *See* Doc. No. 26, p.4. Well established Fourth Circuit precedent, relied on by this Court, held the opposite stating, "§ 1926(b) protects against only certain forms of competitive behavior, including "curtailment or limitation of the associations' service areas **through** annexation **or** through the imposition of conditions for service such as the requirement of a franchise, license, or permit." *Chesapeake Ranch Water Co*. 401 F.3d at 278 (emphasis added).

9

*v. Currituck Cty.*, No. 21-1363, 2022 U.S. App. LEXIS 13779, at *2 (4th Cir. May 20, 2022) (citing *Depaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018)). "[T]o establish a continuing violation [,] the plaintiff must establish that the unconstitutional or illegal act was a fixed and continuing practice" and the "same alleged violation [must have been] committed at the time of each act." *National Advertising Co. v. Raleigh*, 947 F.2d 1158, 1166-67 (4th Cir. 1991) (cleaned up). "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Id*. at 1166 (internal quotation marks omitted).

The City maintains that each annexation that allegedly violated § 1926(b) is a discrete and non-continuous act. Each subsequent annexation had no effect on any injury caused by a previous annexation and any economic loss suffered by IWC was the ill-effect of the initial annexation. The continuing violation doctrine is therefore inapplicable. IWC responds that it has alleged that the City has committed the same violation repeatedly, comprising at least 40 separate annexations[6] against IWC involving the same protected interest. Thus, these separate annexations constitute a continuing violation.

The Fourth Circuit has described a continuing violation as one that "does not occur at a single moment" but "instead is a series of separate acts [where] the same alleged violation is committed at the time of each act." *Miller v. King George Cty.*, 277 F. App'x 297, 299 (4th Cir. 2008) (citing *National Advert.*, 947 F.2d at 1167-68). The "proper focus is upon the time of the [unlawful] acts, not upon the time at which the consequences of the acts became most painful." *National Advertising Co.*, 947 F.2d at 1168 (quoting *Abramson v. Univ. of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979)). While IWC alleges somewhere between 40 and 76 separate annexations over

---

[6] IWC's allegations include annexations alone and annexations combined with competitive water sales. *See* Doc. No. 53, p. 14.

the course of approximately thirty-five years, each alleged statutory violation became actionable at the moment these annexations curtailed IWC's water service. *See e.g.*, *Beckham Cnty. Rural Water Dist. No. 3 v. City of Elk City*, No. CV-05-1485-F, 2014 WL 12818729, at *10 (W.D. Okla. June 2, 2014) ("the alleged encroaching sales are discrete, wrongful actions, independently actionable.'). To be sure, IWC alleges "separate acts," in the sense there were multiple annexations, but there is no link between the various annexations other than the same parties being involved. Each of these annexations, which likely took place for varying reasons, affected different areas and different potential customers. IWC's alleged injuries from one annexation are in no way related or dependent on another annexation. Simply put, just because the City allegedly violated the same statute forty times over thirty-four years does not make these violations one continuous violation. Consequently, the continuing violation doctrine is inapplicable.

However, even if the continuing violation doctrine were applicable, it would offer no refuge for IWC. A continuing violation theory "should not provide a means of relieving plaintiff from its duty of reasonable diligence in pursuing its claims." *National Advertising Co*., 947 F.2d at 1168 (*citing Ocean Acres Ltd. V. Dare County Bd. Of Health*, 707 F.2d 103, 107 (4th Cir. 1983)). Accordingly, a continuing violation "does not toll the statute of limitations indefinitely, and the limitations period begins to accrue on a plaintiff's constitutional claim when the plaintiff knows of or has reason to know of the alleged injury which is the basis of its action." *WFC Mgmt. Corp. v. New Hanover County Airport Auth.*, No. 7:16- cv-86, 2017 WL 151594, at * 4 (E.D.N.C. 2017).[7]

---

[7] While the statutory limitations period for § 1983 actions is borrowed from state law, "the time of accrual of a civil rights action is a question of federal law." *Nat'l Advert. Co*., 947 F.2d at 1162 (citing *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975); *Campbell v. Haverhill*, 155 U.S. 610, 39 L. Ed. 280, 15 S. Ct. 217 (1895); *Bridgford v. United States*, 550 F.2d 978, 981 (4th Cir. 1977)); *see also Halle Dev., Inc. v. Anne Arundel Cty.,* 121 F. App'x 504, 507 (4th Cir. 2005). Under federal law the time of accrual "is when plaintiff knows or has reason to know of the injury which

It appears undisputed that IWC knew well before September 2, 2018, possibly since 1988, that the City has been annexing and providing water to the disputed areas. IWC cannot sit on its hands for potentially thirty years and then rely on the continuing violation doctrine to avoid any responsibility for its dilatory response to these annexations and the curtailment of its water service. Therefore, any claim that arose from annexation and curtailment before September 2, 2018, is time-barred and will be dismissed.

C. Failure to Join Necessary Parties

Lastly, the City argues that IWC has failed to join necessary parties because if the Court adopts IWC's service area map IWC could then use the Court's ruling to claim that it is the exclusive water service provider over areas that are being served by other towns and companies including the Town of Troutman, the Town of Mooresville, West Iredell Water Company, and Energy United Water Corporation. Therefore, the Court should dismiss IWC's claims under Rule 12(b)(7) or, in the alternative, require that the parties be joined.

IWC argues that the entities which the City claims are necessary have no interest or claim in this litigation and are thus not necessary parties. IWC maintains this litigation "seeks only a determination concerning the rights to serve the Encroachment Areas as between IWC and the City." *See* Doc. No. 53.

> Rule 19 of the Federal Rules of Civil Procedure requires:
>
> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an

---

is the basis of the action." *Halle Dev., Inc.,* 121 F. App'x at 507 (citing *Nat'l Advert. Co.*, 947 F.2d at 1162). Both parties argue the accrual issue under both federal and state law. Because federal law governs, the Court need not address the arguments based on North Carolina law.

> existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19. Courts must consider "the very real, very substantive claims to fairness on the part of outsiders that may arise in some cases." *Teamsters Loc. Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 917 (4th Cir. 1999) (quoting *Provident Tradesmen Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 125, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968)). "[N]o court can adjudicate directly upon a person's right, without the party being actually or constructively before the court." *Id*. at 920 (quoting *Shields v. Barrow*, 58 U.S. (17 How.) 130, 141 15 L.Ed. 158 (1855)).

To determine whether a party must be joined under Rule 19, the Court engages in a two-part analysis. *Id*. First, the Court must determine "whether a party is necessary to a proceeding because of its relationship to the matter under consideration." *Id*. Second, if a necessary party is unavailable, the court must determine whether the matter can proceed without the necessary party. *Id*. at 917-18. If the suit cannot proceed, the party is indispensable and the action should be dismissed. *Id*. at 918. The burden of showing that an absent party is necessary under Rule 19 is on the moving party. *See Sunbelt Rentals, Inc. v. Guzman*, No. 5:20-CV-00070-KDB-DSC, 2020 U.S. Dist. LEXIS 167059, at *3 (W.D.N.C. Aug. 27, 2020).

On the record before the Court, the City has not met its burden. The Court will not adjudicate the rights of these "necessary parties" in their absence, but the City has failed to show, with any specificity, that the annexations or service area at issue would impact the rights of these "necessary parties." The City has simply attached a map that shows the entirety of IWC's alleged service area and presumably the area for which it seeks a declaratory judgement. This is

13

Case 5:21-cv-00132-KDB-DSC    Document 58    Filed 09/28/22    Page 13 of 14

insufficient to meet its burden. Therefore, the Court will deny the City's motion under Rule 12(b)(7) without prejudice.[8]

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion to Dismiss, (Doc. No. 47), is **GRANTED in part and DENIED in part**:

    a. Claims that arose from annexation and curtailment before September 2, 2018, are time-barred and are dismissed; and

    b. Plaintiff's remaining claims may continue as described above in the absence of a voluntary resolution of this dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: September 28,

Kenneth D. Bell
United States District Judge

---

[8] The Court will permit the City to raise this argument again as to the remaining annexations. However, a more particularized showing of the necessity of additional parties will be required to support any reasserted motion.